## McGREGOR *v.* MONTGOMERY.

The property of one in actual or constructive possession of several tracts of land, as lessee or partner with the owner, is liable to distress for taxes assessed during his occupancy, on the real estate in the name of the owner.

Property of an occupier of land may be seized under a distress for taxes, although it be not on the premises; the rule governing distresses for rent not being applicable.

Where the collector of taxes distrain and sell property of a tenant for a real and personal tax of the landlord, and the property, without sacrifice, does not produce sufficient to pay the amount of the assessment on the realty, the collector is not a trespasser, the amount of the personal tax not having been particularly demanded or objected to.

A levy on and release of the goods of a stranger under a mistaken supposition that they were the goods of the landlord, is no bar to a distress on the tenant's goods for the same tax.

Evidence that plaintiff's lease had been deposited with one who, at the time of the trial, resided out of the state, will not authorize parol evidence of its contents by the plaintiff, the defendant having notified him to produce the document.

IN error from the Common Pleas of Jefferson county.

*Oct.* 20. This was an action of trespass against a collector of taxes for selling the property of defendant under a warrant. The plaintiff proved the seizure of a horse and saddle, four or six miles from his residence, by defendant claiming under a warrant against Robinson, and a sale at the house of the collector after advertisement. The defendant gave in evidence the duplicate of the assessment of Robinson's property, for 1843, consisting of a tract of land with a saw and grist-mill, and five other tracts, together with one mare and a cow valued at $40, and $10 respectively, the total valuation of which property was $2901, and the tax assessed $29 00.

Also a warrant signed by the commissioners.    He then proved that defendant resided with Robinson and others, at the mill tract, the title of which Robinson claimed.    Also that defendant, Robinson and the others, had said in each other's presence, that they were to have the mills and privilege of using the timber on all the lands for three years.    The plaintiff gave evidence that the several tracts of land were separated from each other a considerable distance, and that Robinson claimed exclusive title, and was in exclusive possession of some of them.    He also gave evidence that defendant had previously levied under the warrant, on some boards of Robinson, which were delivered up for that purpose by plaintiff, but on cross-examination the witness stated, (and there was other evidence to the same effect,) that they were given up on proof they belonged to a stranger.    He further proved the value of the saddle and bridle was from $3 to $5.    The defendant had given notice to produce the lease of the property.    The plaintiff then offered to prove by his own oath that the lease between plaintiff, Robinson and others had been deposited with Fitsimmons, who now resided in Tennessee, for the purpose of introducing parol evidence of its contents, but the court rejected the evidence.    The defendant then proved the property sold for $26, and the purchaser, four or five days after, sold the mare for that sum.    It was admitted that the seizure was for the entire amount of the assessed taxes.

The court, (McCALMONT, P. J.,) after stating the provisions of the 21st and 46th sections of the act of 1834, instructed the jury that if the tax, for which the sale was made, was assessed on the property of Robinson, of which plaintiff was in possession at the time of the assessment, and so continued until the sale, whether solely, or as partner with Robinson and others, the defendant was justified in seizing the property in any part of the township.    A constructive payment of the tax prior to the seizure would render him liable, and that a seizure and release of Robinson's own property would amount to such a payment.    That there was nothing in the act of 1844, which altered the law as to plaintiff's liability for the taxes, and it was immaterial whether Robinson was in the county after the defendant received his duplicate.

The answers to the plaintiff's third, fourth, fifth, sixth, seventh, and ninth points were excepted to; these were, 3. That the distress might be made off the premises. 4. It was immaterial that the tracts were assessed separately, if plaintiff occupied them under his lease or agreement. 5. The court did not see any evidence that the collector distrained for the personal tax, which was fifty cents, the

amount levied not being more than the amount due on the realty. 6. That it was not the duty of the collector to return the duplicate to the commissioners under the act of 1844, sec. 41, if the owner or occupier refused to pay the taxes, or turn out property. The 7th was answered distinctly as requested. 9. A previous demand of the taxes was necessary, but the turning out property to meet the demand was evidence thereof.

The rejection of parol evidence of the contents of the lease, in addition to the answers of the court to the plaintiff's points, were the errors assigned.

*Jenks* and *Arthurs*, for plaintiff in error.—It was contended on the trial, that as Montgomery lived on the property, he was liable for all the taxes. They were assessed against Robinson. Montgomery was a tenant of one of the tracts only. To charge a tenant, he must be in possession at the time the taxes are assessed. In assessing the taxes against Robinson, the county had made its election; and the property of Montgomery could not be distrained therefore. If taxes are assessed against the real owner of the land, they cannot be collected from the tenant. Property distrained for taxes must be on the premises at the time of making the distress. If Montgomery was liable for a part, he was certainly not liable for the whole amount of the tax assessed against Robinson. Act of the 15th April, 1834, secs. 21 and 46, Purd. Dig. 205–7, and Act of the 29th April, 1844, sec. 41; Pamph. Laws, 501.

The collector must look to the person assessed. Shaw *v.* Quin, 12 Serg. & Rawle, 300. The taxes cannot be apportioned. The abandonment of a sufficient levy on the goods of the owner of the land, is a satisfaction of the taxes. Parker's Appeal, 8 Watts & Serg. 449.

*Clarke*, contra.—It was the duty of the plaintiff to have had the lease at the trial. Robinson had leased to Montgomery, his son-in-law. The lease would have disclosed every thing in relation to the tenure of the property. But it was proved, that Montgomery was in the possession of all the property, as the tenant of Robinson. The assessor is not bound to inquire whether the owner of a property has leased it. Montgomery, as the tenant of Robinson, was liable for the taxes. The distress upon Floyd's lumber (which was abandoned) for the taxes, was a sufficient demand under the act of Assembly. A collector is a public officer, and will be protected in the execution of his duty.

If there was any injury committed by the collector, it was an

excessive distress, and the remedy should have been case and not trespass.

Oct. 28. COULTER, J.—This is an action brought by the plaintiff in error, who was plaintiff below, against the defendant, who was a collector of taxes, for selling the plaintiff's property.

The defendant offered his warrant as collector of Porter township, and the collector's duplicate of said township, in evidence, to which the counsel for the plaintiff excepted; the court overruled the exception, and sealed a bill of exceptions. The papers were admitted to be genuine, and properly authenticated.

There is nothing whatever in the exception. The taxes for which the defendant's property was sold were assessed in the name of John Robinson, who was proprietor of six tracts of land in Porter township, on one of which a grist and saw-mill was erected. There was no dispute whatever as to the occupancy by Montgomery of the mill tract, but in relation to the other tracts there was conflicting testimony.

The main question raised was, whether the property of Montgomery could be distrained and levied for the taxes assessed on these lands.

The court instructed the jury quite distinctly, that unless Gilmore Montgomery occupied all these lands at the time of the assessment and levy, that the defendant would be a wrongdoer, and not entitled to protection under the shield of his warrant; and the court imbody the forty-sixth section of the act of the 24th February, 1834, into their instruction, so that there was no room for mistake or misapprehension. The question of occupancy they referred to the jury to be determined by the evidence.

The distress or levy of the mare of Montgomery by the collector was made at a vendue some distance from the premises, and the counsel for plaintiff requested the court to instruct the jury that such a distress was illegal; that no property could be levied by a collector, except on the premises for which the tax was assessed. But the court very properly refused to give this instruction. It cannot be pretended that by the use of the word distress, the legislature intended to give the levy of a collector of taxes all the incidents of a distress for rent. It is more in the nature of an execution; and the words levy and distress are used in the statute, so as to exhibit an intent to make them equivalent, and of the same import. It might as well, on the same ground, be contended that a collector was bound to put up notice on the premises, wait five days for a reple-

vin, then have the property valued, and so on through all the formula, but the process would be so cumbrous as to be inconsistent with public policy, and therefore not within the intent of the legislature.

There is no analogy between the cases. The landlord, without the staff of office, or ministerial authority, proceeds on his own responsibility, and for his own benefit, and it is therefore necessary to bind him up to the strictest rules of the ancient distress. But the collector is a public officer clothed with the mantle of authority, acting for the benefit of the public, and without whose services the wheels of government would stop. He has to do with all sorts and conditions of people; is obliged to encounter the prejudices and passions of his neighbours, and unless he goes clearly beyond the range of his warrant, he ought to be protected by the law, whose servant he is.

With the tracts of land there was also assessed to John Robinson a mare and a cow, both valued at $50. The plaintiff's counsel requested the court to charge the jury that this circumstance made the defendant a trespasser. The court declined to give the instruction. The whole assessment of John Robinson amounted to $29; the proportion of the mare and cow would be from the apparent rate of assessment, 50 cents. The mare levied on by the collector sold for $26, an amount not sufficient to pay the assessed tax on the real estate. It would appear that there was no sacrifice of property by the sale; for the purchaser of the mare sold her the next day at the same price; nor is there any unfairness alleged in the sale. The plaintiff therefore suffered no wrong, if he was the occupant of the six tracts of land; which question was fairly submitted to the jury, and found against him. It does not appear that the collector specified the tax on the personal estate, as composing part of the sum for which he levied, nor that he demanded that tax specifically from Montgomery, nor that Montgomery objected particularly to that part, but that his objection was to the payment of any part of the tax, assessed in the name of John Robinson. The only evidence that the collector included in his levy the amount of the personal tax, was in the duplicate which he produced himself, but that indeed, under the circumstances, was no evidence at all, as he did not levy enough to pay the tax on the realty.

The counsel for plaintiff requested the court to charge the jury, that if they believed the defendant distrained for the taxes before he took plaintiff's mare, and released his levy, that the first levy was a satisfaction, and he could make no distress afterwards. The

court instructed the jury that the law would be so, if defendant had released the levy without reason. But the facts exhibited in evidence show that as a faithful and honest officer, the collector was bound to release the first levy. The plaintiff in error turned out to the collector boards and scantling as the property of John Robinson, on which the collector levied, but evidence was given to him that the boards and lumber belonged to some person in Pittsburgh, (and that fact was fully sustained on the trial.) The collector thereupon gave up his levy, and afterwards levied and took the mare of the plaintiff. Under these circumstances, the levy was no satisfaction, and did not even give colour or shadow for the plaintiff's point in this respect.

There were some minor points which run into each other, and into those noticed, and which could not affect the decision of the cause.

The court perceive no error in the instructions of the court which have been made the basis of the assignment of errors, nor in any matter of law contained in the charge.

Judgment affirmed.