120      368
32 SC  310

## M. SHIRES ET AL. v. THE COMMONWEALTH.

ERROR TO THE COURT OF QUARTER SESSIONS OF CENTRE
COUNTY.

'Argued April 17, 1888—Decided May 14, 1888.

The act of April 12, 1872, P. L. 60, requiring that any promissory note or
other negotiable instrument, the consideration for which shall consist in
whole or in part of the right to make, use or vend any patent inven-
tion, shall'have the words " given for a patent right" prominently and
legibly written or printed on the face thereof, and making it a misde-
meanor to take, sell or transfer any promissory note or negotiable
instrument not having said words so written or printed thereon, know-
ing the consideration thereof to consist in whole or in part of the right
to make, use or vend any patented invention, is not void under either the
federal or the state constitution.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK
and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 247 January Term 1887, Sup. Ct.; court below, No. 3
November Term 1886, Q. S.

On November 23, 1886, an indictment was found a true bill,
charging Michael Shires and J. Q. A. Kennedy, agents for
Henley's Improved Monarch Fence Machine, a patented inven-
tion, with taking from George W. Ocker, in payment for the
right to use, vend and sell the said machine in certain counties,
a certain promissory note of which the following is a copy:

$315.00.          CENTRE HALL, PA. August 12, 1886.

Three months after date, I promise to pay to the order of
Shires & Kennedy, three hundred and fifteen dollars and
— cents, at Penn's Valley Bank, without defalcation for value
received, waiving the right of all valuation, appraisement, stay,
homestead and exemption laws.          GEORGE W. OCKER.

well knowing the consideration of said note or instrument to
consist in whole or in part of the right to make, use or vend
a patent invention or invention claimed to be patented, etc.,

without having the words " given for a patent right," written or printed prominently and legibly on the face of said note, as required by the act of April 12, 1872, P. L. 60.

At the trial, on November 24, 1886, the court, FURST, P. J., charged the jury as follows:

On April 12, 1872, the legislature of this state passed an act of assembly which I will read in your hearing:—

Whenever any promissory note or other negotiable instrument shall be given, the consideration for which shall consist in whole or in part, of the right to make, use or vend any patented invention or inventions, (the word vend means to sell,) claimed to be patented, the words, "given for a patent right," shall be prominently and legibly written or printed on the face of such note or instrument above the signature thereto; such note or instrument in the hands of any purchaser or holder, shall be subject to the same defences as in the hands of the original holder.

If any person shall take, sell or transfer any promissory note or any other negotiable instrument, not having the words, " given for a patent right," written or printed legibly and prominently on the face of such note or instrument, above the signature thereto, knowing the consideration of such note or instrument to consist, in whole or in part, of the right to make, use or vend any patented invention or inventions claimed to be patented, every such person or persons, shall be deemed guilty of a misdemeanor.—

The policy or spirit of the law consists in this, where a note was given based upon such consideration, to have the words, " given for a patent right," written on the face of it, so that if any fraud had been practiced upon the maker of the note, he might set it up as a defence against the payment of the note in the hands of the holder of it, because by the commercial law a negotiable note may be passed into the hands of a purchaser of it for value before maturity, and the maker of the note would have to pay it, notwithstanding, between the original parties, it was totally worthless and void. Therefore, to destroy the negotiability of notes given for a patent right, the legislature passed this act requiring that such notice should be written thereon, viz.: "given for a patent right," so as to preserve a defence to the maker thereof.

VOL. CXX—24

The penal provisions of this act of assembly you will find in the second section, which makes it a misdemeanor for any person to receive or take such a note, knowing the consideration of such note to consist of the right to vend a patented invention, without having written thereon prominently or printed legibly the words, "given for a patent right."

[The commonwealth alleges that this note is given in whole or in part for the purpose of vending this patented invention; that a part at least of the consideration of this note is given for the right to vend a patented invention in the territory of the township of Green, in the county of Clinton. The evidence adduced on the part of the commonwealth also shows that in connection with this transaction, five machines were furnished to Mr. Ocker, which it is alleged were fixed at the price of $63.00 a machine, so that the five machines at $63.00 apiece would amount to $315.00.

The defendants allege that these five machines constituted the sole consideration of this note, while the commonwealth alleges that the right to vend in the described territory is a part of the consideration of the note, as well as the machines, and that Mr. Ocker would have no possible use for five of these "Monarch Fence Machines," except in connection with the right to sell in certain territory. And papers are offered in evidence bearing date of the 11th or 12th of August, when this contract was entered into, which speak plainly upon the subject of the contract.

The simple question, therefore, for you to determine is this: If the consideration of this note, in whole or in part, consisted of the right to vend this patented invention in this territory, and the defendants knew the consideration to be such, then these defendants are guilty under this indictment.][1]

If on the other hand you find from the evidence that the entire consideration of this note was made up of the five machines, then the defendants could not be convicted, because, under this act of assembly, it is not made a penal offence to sell the machines, notes given for the manufactured article alone need not have written upon their face these words. But if the consideration in whole or in part consisted of the right to vend this patented invention in this territory, then this case falls directly within the penal provisions of this act of assembly.

The evidence has been discussed in your hearing and it is not our purpose to review it at all.   It is plain and simple.   The witnesses are few and their testimony is short, and you remember it distinctly.

The jury having returned a verdict of guilty, the defendants moved in arrest of judgment for the reason : Because the act of assembly of April 12, 1872, creating the offence for which the defendants were indicted and of which they were convicted, contravenes the constitution of the United States and the laws thereof relative to patents and patent rights, and is therefore unconstitutional.   This motion was refused and the defendants were each sentenced to pay a fine of $150 and the costs of prosecution.   The defendants then took this writ assigning as error :

1. The part of the charge embraced in [ ] [1]

3. The overruling of the motion in arrest of judgment.

*Mr. John G. Love* (with him *Mr. John H. Orvis, Mr. C. M. Bower* and *Mr. E. H. Orvis*), for the plaintiffs in error :

1. It is true, this court, in Haskell v. Jones, 86 Pa. 173, has sustained the constitutionality of the act in question.   With profound respect for the decisions of this court, we refer to one or two matters in the opinion in that case, that impress us that it was somewhat hastily considered.   " If the act passed April 12, 1872, makes absolutely void such notes in which the words ' given for a patent right ' are not prominently and legibly written or printed on the face of such note above the signature thereto, there would be great reason for the contention that the act is unconstitutional and void.   No state can so interfere with the right of a patentee, secured to him by the acts of congress, to sell and assign his patent."   Does not the act, in effect, make such note void, as between the original parties thereto ?   The second section makes the taking of such note a misdemeanor.   Courts would not permit a recovery upon an instrument which the law declares it a criminal offence to take : Bowen v. Kemerer, 2 Pears. 250.

2. Again, it is said : " There is nothing in all this which interferes with any just right of the holder of a valid patent under the acts of congress, nor that the maker of the note shall be permitted to show against a holder with such notice that it was

obtained by fraudulent misrepresentation. This very plainly distinguishes our act from the statutes of other states, which have been held unconstitutional." Yet our act is a literal transcript of the Ohio statute, passed May 4, 1869, § 3178, which was held unconstitutional by Justice SWAYNE, in Woolen v. Burker, 17 Alb. L. J. 72; s. c. 2 Flip. 309. So, the Indiana statute, similar in terms: In re Robinson, 2 Biss. 309. And see Helm v. First N. Bank, 43 Ind. 167; Herrett v. Merchant's N. Bank, 34 Ind. 380; Haskell v. Whitmore, 19 Me. 102.

3. Congress, in pursuance of § 8, article 1, of the constitution of the United States, has prescribed the terms and conditions upon which patents may be obtained, and the manner in which the franchise may be assigned or conveyed: Rev. St. U. S., §§ 4883, 4886, 4898, 4899. The states have no power, by taxation or otherwise, to retard, impede, burthen, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government: McCulloch v. Maryland, 4 Wheat. 316; Osborn v. Bank of U. S., 9 Wheat. 738, 774; Gibbons v. Ogden, 9 Wheat 1; Bank of Commerce v. New York City, 2 Black 620, 632; State Freight Tax Case, 15 Wall. 232, 279, 280; Railroad Co. v. Husen, 95 U. S. 465.

4. If congress have a constitutional power to regulate a particular subject, and they do actually regulate it in a given manner and in a certain form, it cannot be that the state legislatures have a right to interfere, and, as it were, by way of complement to the legislation of congress, to prescribe additional regulations, and what they deem auxiliary provisions, for the same purpose. In such a case the legislation of congress, in what it does prescribe, manifestly indicates that it does not intend that there shall be any further legislation to act upon the subject matter: Brigg v. Commonwealth, 16 Pet. 539, 617; Houston v. Moore, 5 Wheat. 1, 21–22; Sturgis v. Crowninshield, 4 Wheat. 122; Gibbons v. Ogden, 9 Wheat. 1; Brown v. Maryland, 12 Wheat. 419; Cooley v. Port Wardens, 12 How. 299; Bank of Commerce v. New York City, 2 Black 620; Gilman v. Philadelphia, 3 Wall. 713; Crandall v. Nevada, 6 Wall. 42; Welton v. Missouri, 91 U. S. 275; County of Mobile v. Kimball, 102 U. S. 691; Webber v. Virginia, 103 U. S. 344, 350; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196;

Brown v. Houston, 114 U. S. 622; Walling v. Michigan, 116 U. S. 446; Pickard v. Pullman Southern Car Co., 117 U. S. 34.

*Mr. J. L. Spangler* (with him *Mr. J. C. Meyer, District Attorney*), for the defendant in error:

1. The question of the constitutionality of the act of 1872 has been settled by this court in Haskell v. Jones, 86 Pa. 173. Other states, notably Ohio, Illinois and Michigan, have held statutes of this kind unconstitutional, but their statutes are plainly distinguishable from ours. The decision in Woolen v. Burker, 17 Alb. L. J. 72, was rendered in the Circuit Court for the Southern District of Ohio in 1877. Yet, the Supreme Court of the United States, in 1878, Justice SWAYNE sitting, declared a different doctrine in Patterson v. Kentucky, 7 Otto 501.

2. If the power extends to a just regulation of rights, with a view to the due protection and enjoyment of all, and does not deprive any one of that which is justly and properly his own, it is obvious that its possession by the state, and its exercise for the regulation of the property and actions of its citizens, cannot well constitute an invasion of natural jurisdiction: Cooley Const. Lim., 574. Has not the state the right to say what shall and what shall not be commercial paper? Has not the state the right to punish persons who commit offences against its criminal laws within its territory? Whilst a state is acting within the scope of its legitimate power, as to the end to be attained, it may use whatever means, being appropriate to the end, it may deem fit, although they may be the same or so nearly the same, as scarcely to be distinguishable from those adopted by congress, acting under a different power: New York City v. Mifflin, 11 Pet. 103.

3. A reasonable doubt must be solved in favor of legislative action, and the act sustained: Cooper v. Telfair, 4 Dall. 18; Kendall v. Kingston, 5 Mass. 524; Hartford Bridge Co. v. Union Ferry Co., 29 Conn. 227; Stocking v. State, 7 Ind. 327; Newland v. Marsh, 19 Ill. 381; F. & M. Bank v. Smith, 3 S. & R. 63.

PER CURIAM:

There is nothing in the act of April 12, 1872, which infringes the constitution of this commonwealth, nor do we

think it conflicts with the Federal constitution. As a police regulation the statute has proved itself to be valuable in that it has been the means of preventing gross frauds upon our citizens to which, before its enactment, they were subjected. Under these circumstances we are not disposed to pronounce this law invalid.

> The judgment of the Quarter Sessions is affirmed, and it is ordered that the record be remitted for execution.