## Wolson v. Worrilow.

*Ledward & Hinkson*, for plaintiff; *A. A. Cochrane*, for defendant.

FRONEFIELD, P. J.—This replevin was brought by Julius Wolson against the Treasurer of the City of Chester and against a constable to test the validity of a levy on plaintiff's personal property by the city treasurer for the collection of taxes. The trial judge gave the jury binding instructions for the defendant. William B. Marker was the owner in 1921 and 1922 of Nos. 245 and 247 Market Street in said city. No. 247 had been rented to a Mr. Becker in 1922, who was in its possession at the time of the levy on Wolson's property. In August, 1922, Marker sold his furniture and equipment and his business, carried on at No. 245, to Wolson and rented him the front room of No. 245 for two years and was paid rent in advance for one and one-half years. The mortgage, given prior to Wolson's lease, on No. 245, was foreclosed in 1922 and Wolson was subsequently notified to move from the premises. Before he vacated the premises his goods in No. 245 were distrained for taxes for the years 1921 and 1922 assessed prior to Marker's occupancy in one assessment against No. 245 and No. 247, which are separate and distinct properties, in separate possession. This replevin was then issued. Whether or not this is a proper procedure is not questioned.

The business which Wolson purchased from Marker was that of insurance, real estate and brokerage, and the property distrained for taxes was office furniture and equipment appropriate to and used in that business.

Marker, at the time of the sale and transfer of the business, furniture and equipment, delivered to Wolson, under the Sales in Bulk Act of March 28, 1905, P. L. 62, a list of his creditors, with their addresses and the respective amounts due them. The City of Chester was not on that list. These creditors were paid at the time of the transfer of the business, furniture and equipment.

It is now contended that property on No. 245, belonging to Wolson, the tenant of the premises, may not be seized by levy and distress and be sold for taxes assessed against No. 247, which was never in the possession of Wolson.

The Act of April 3, 1804, 4 Sm. Laws, 201, provides that "every tenant who may or shall occupy or possess any lands or tenements shall be liable to pay

all the taxes which during such occupancy or possession may thereon become due and payable."

This act does not help the defendant. It makes the tenant of the property liable for the payment of the taxes assessed against the property he occupied during his occupancy or possession.

It does not make the tenant liable for the taxes on property not occupied by him nor unless the taxes are assessed during his occupancy. In the instant case, the tenant did not occupy one property assessed, nor were the taxes assessed during his possession: Henry v. Horstick, 9 Watts, 412.

· The Act of April 15, 1834, P. L. 509, in section 46, provides that "the goods and chattels of any person occupying any real estate shall be liable to distress and sale for the non-payment of any taxes assessed upon such real estate during his possession or occupancy and remaining unpaid in like manner as if they were the goods and chattels of the owner of such real estate."

This act does not help the defendant. Under it, to make the goods and chattels liable for taxes, the taxes must be assessed on the real estate occupied by the tenant during his possession or occupancy. It does not make the tenant liable for the taxes on property not occupied by him nor unless the taxes are assessed during his occupancy: Smeich v. York County, 68 Pa. 439.

The Act of May 23, 1889, P. L. 277, article xv, section 8, provides that "the said collectors shall severally have and exercise all the powers vested by law in the collectors of State and county taxes and shall also be authorized, after five days' notice, to seize any property on the premises assessed belonging to tenants or others, without regard to the date of the assessment of the tax, and to levy upon any personal property of the delinquent that may be found within the county for the collection of said tax."

This means that the collectors may seize any property belonging to tenants or others on the assessed premises, whether the owner thereof occupies the premises or not and whether it was or was not on the assessed premises at the time of the assessment. It does not provide that property not of the delinquent taxpayer on one of the assessed premises is liable for the tax on another assessed premises. This is made plain by the act giving the collector the right to levy on the delinquent's property off the assessed premises.

The Act of May 16, 1901, P. L. 248, section 31, provides that "collectors shall severally have and exercise all the powers vested by law in the collection of State and county taxes and shall also be authorized, after five days' notice, to seize, by levy and distress, any property on the premises assessed belonging to tenants or others without regard to the date of the assessment of the tax and to sell the same, giving ten days' public notice of such sale by written or printed advertisement, and to levy upon any personal property of the delinquent that may be found within the county for the collection of said tax."

This means that the collectors may seize and sell any property on the assessed premises, whether its owner occupies the property or not, and whether it was or was not on the assessed premises at the time of the assessment or levy, but it does not provide that property not of the delinquent on one of the assessed premises is liable for the tax on another assessed premises. This is emphasized by the authority to levy on the delinquent's property not on the assessed premises.

The Act of June 20, 1901, P. L. 578, section 5, provides that the "treasurer, as the collector of the several taxes, and his deputies, shall have and exercise all the powers vested by law in the several collectors of State and county taxes and in all the remedies for the collection thereof; and shall have additional power and authority, after five days' notice, to seize by levy and distress any

property on the premises assessed belonging to tenants, purchasers or others, without regard to the date of assessment or levy of the tax, and to sell the same, giving ten days' public notice of such sale by written or printed advertisement; and to levy upon any personal property of the delinquent that may be found within the county for the collection of said taxes. . . ."

This means that the treasurer may seize by levy and distress and sell any property on the assessed premises, whether its owner occupies the premises or not and whether it was or was not on the premises at the time of the assessment. It does not provide that property not of the delinquent on one of the assessed premises is liable for the tax on another assessed premises. This is made plain by the act giving the treasurer the right to levy on the delinquent's property not on the assessed premises.

It is argued by the defendant that, inasmuch as the two premises are assessed together, the property being on one of the premises was on the premises assessed and is, therefore, liable for the tax due on both. The answer to that is that the property was on one of the assessed premises, but not on the other, and, hence, is not liable for taxes due on the other. Assessing premises together does not make them one, and property seized must be on the premises assessed.

In McGregor v. Montgomery, 4 Pa. 237, it was held that property of a tenant in the possession of premises is liable to distress for taxes assessed against the premises during the tenant's occupancy, even though the property is seized when not on the premises. This does not help the defendant, because the plaintiff was not in the occupancy of, nor was his property on, No. 247.

Neither does Popp v. Eamigh, 54 Pa. Superior Ct. 263, help the defendant, which holds that under the Act of 1834 property of a person occupying the premises assessed may be seized for the taxes, even though it was not on the premises at the time of the assessment. The property here was never on No. 247, nor was that premises ever occupied by the plaintiff.

I know of no act nor decision which justifies the seizure and sale of personal property belonging to a tenant and being off the premises assessed, unless its owner was occupying the premises at the assessment.

The plaintiff contends that the Sales in Bulk Act applies to the sale of a real estate and insurance business with a sale of office furniture and fixtures.

Horses, carts, hoisting machines, etc., used in business are not merchandise nor fixtures within the meaning of the Sales in Bulk Act of 1905: Northrop v. Finn Con. Co., 260 Pa. 15.

Under the repealed Act of March 28, 1905, P. L. 62, President Judge Rice said: "The act speaks of a 'stock of merchandise and fixtures and of a sale of them otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business. When read together and with the context, these clauses imply, we think, not simply that the goods were once merchandise, that is, commodities traded in by merchants, but that at the time of the sale they still bore the character of a stock of merchandise, that is, goods and merchandise employed in trade, which in the ordinary course of trade and in the regular and usual prosecution of the seller's business would be sold or bartered otherwise than by a sale in bulk: Wilson v. Edwards, 32 Pa. Superior Ct. 295."

The Act of May 23, 1919, P. L. 262, section 5, states that a sale in bulk in contemplation of this act "shall be deemed to be any sale or transfer of the whole or large part of any stock of goods, wares or merchandise of any kind, or fixtures, or of goods, wares or merchandise of any kind and fixtures . . .

than in the ordinary course of business or trade and in the regular and usual prosecution of the seller's business."

This language is practically the same as that in the Act of 1905, and it is fair to assume that the legislature intended it to have the same construction: Com. v. Bailey, 20 Pa. Superior Ct. 210. It follows that the act does not apply.

It is further contended that notice was not given to the plaintiff as provided in the act. The Act of June 20, 1901, P. L. 578, provides that the treasurer of the city shall have "power and authority, after five days' notice, to seize by levy and distress any property on the premises assessed belonging to tenants, purchasers or others" and to sell the same, etc.

The evidence is that the city treasurer said to the plaintiff that "it will be necessary for me to take action against goods on the premises." He testified he told him that the taxes were unpaid and explained the situation to him. He also testified he had learned that the rent had been paid in advance and, therefore, he could do nothing there, so "I told him, under those conditions, it would be necessary to go further and make a levy on the goods." The plaintiff testified that he was told by the treasurer that taxes were due on the property occupied by him and that he had the right to collect them from him and that the levy was the first formal demand of him for the tax.

Even though the notice which the treasurer said he gave the plaintiff be sufficient, whether or not it was so given is a fact to be determined by the jury. The notice which the plaintiff said he received is clearly not a notice that the treasurer would seize his property by levy and distress.

And now, to wit, Oct. 5, 1928, the plaintiff's motion for a new trial is granted, and his motion for judgment *non obstante veredicto* is refused.

From William R. Toal, Media, Pa.