## Schumacher-Binzley Company *v.* Riddle, Appellant.

*Contract—Sales—Sale of goods in bulk—Fraudulent sale—Proceeding to invalidate—Acts of March 28, 1905, P. L. 62, and July 12, 1842, P. L. 339.*

1. A sale of a stock of goods in bulk by a debtor to his creditor, where there is no other consideration than the discharge of the existing indebtedness, is within the operation of the Bulk Sales Act of March 28, 1905, P. L. 62, and if the requirements of that act were not complied with it is fraudulent and voidable as against the creditors of the seller.

2. An appropriate remedy to set aside and invalidate a sale of goods in bulk in violation of the Act of March 28, 1905, P. L. 62, is an attachment under the Act of July 12, 1842, P. L. 339, brought within the ninety days' limitation of the Act of March 28, 1905, P. L. 62, notice of which is given to the purchaser, and the lien thereof continuously maintained until the goods are sold under the attachment. In such a case it is immaterial that the sale under the attachment was made after the expiration of the ninety days.

Argued May 14, 1912.   Appeal, No. 147, April T., 1912, by defendant, from judgment of C. P. Beaver Co., June T., 1910, No. 237, on verdict for plaintiff in case of Schumacher-Binzley Company v. Theodore Riddle.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Reversed.

Trespass for an alleged wrongful seizure and sale of goods by constable.   Before HOLT, P. J.

At the trial it appeared that on November 28, 1909, Charles Richards, a retail grocer, sold and delivered his whole stock of merchandise to Schumacher-Binzley Company, without any other consideration than the discharge of an existing indebtedness to such company.   In making the sale and delivery of the goods the parties did not comply with the provisions of the Act of March 28, 1905, P. L. 62.

Other facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $155.   Defendant appealed.

*Error assigned* was in refusing judgment for defendant n. o. v.

*Wm. A. McConnel*, with him *T. Frank Covert*, for appellant, cited: Swanson Grocery Co. v. Terwilliger, 17 Pa. Dist. Rep. 11.

*William B. Cuthbertson*, for appellee, cited: Missimer v. Ebersole, 87 Pa. 109; Ritter v. Wray, 45 Pa. Superior Ct. 440; Swanson Grocery Co. v. Terwilliger, 17 Pa. Dist. Rep. 11.

OPINION BY RICE, P. J., October 14, 1912:

Charles Richards, a retail grocer, being indebted to these plaintiffs and others, sold in bulk his stock of merchandise to the plaintiffs otherwise than in the ordinary

course of trade and in the regular prosecution of his business. The fact that the consideration was the discharge of his indebtedness to the plaintiffs did not take the transaction out of the operation of the Bulk Sales Act of March 28, 1905, P. L. 62, and, as the requirements of that act were not complied with, it was to be "deemed fraudulent, and voidable as against the creditors of the seller." But the statute provides, "That no proceedings at law or equity shall be brought against the purchaser to invalidate any such voidable sale, after the expiration of ninety days from the consummation thereof." The question for decision is whether such proceeding as the proviso contemplates was brought within ninety days. The main facts are these: The sale was made and consummated by delivery of the goods on November 28, 1909, and on the following day J. B. Lytle & Co., creditors of Richards, issued an attachment against him, before a justice of the peace, under the Act of July 12, 1842, P. L. 339, alleging that he had removed, secreted, and assigned his property with intent to defraud his creditors. On the same day, according to the justice's record, which was put in evidence, the constable returned the writ "attached defendant's goods in possession of Schumacher and Binzley and served a true and attested copy of attachment on Schumacher and Binzley Company." On December 1, 1909, judgment was regularly entered against Richards in the attachment proceeding for $231.61, and, as stated in the opinion of the learned trial judge, several successive executions, beginning on December 23, 1909, were issued and placed in the hands of a constable, the defendant in this action, who, by virtue of these respective writs, made successive levies upon the property, each of which writs, save the last one was stayed by order of the plaintiffs therein, upon the issuance of a new writ. The last writ was issued on April 4, 1910, and the sale of the goods thereunder took place on April 13, 1910. It is undisputed that all the property levied on under these writs, and finally sold, was the property,

or part of the property, which was the subject of the bulk sale by Richards to these plaintiffs, and was the subject of the attachment. The oral testimony introduced by the plaintiffs as to the possession of the goods is substantially as follows: On November 29, 1909, the date of the attachment, but after the constable had made the levy under it, the goods were taken from the plaintiffs' possession by the sheriff, under some process issued out of the common pleas, and were placed in another building in charge of a watchman. The sheriff thus retained the goods in his custody until December 23 or 24, when he released them and notified the plaintiffs to go and get them. It is to be noticed that this was the date of the first execution issued on the Lytle judgment, and, as we understand the testimony, the plaintiffs' contention was that before they could remove the goods from the building in which they had been stored by the sheriff they were seized and removed by the constable and kept in his possession until the sale. Upon this subject Mr. Schumacher, one of the plaintiffs, in response to the question, "When did Mr. Riddle take the goods with reference to the time the sheriff returned them?" answered, "About a day or two after the sheriff gave us the property." He further testified that this was about a month after he listed the goods, and, according to his previous testimony, the goods were listed on November 29, 1909. The watchman's testimony, introduced by the plaintiffs, was in accordance with the same view. Taking the plaintiffs' contention and evidence, the conclusion is irresistible that, after the sheriff released the goods and within the sixty days' period during which they remained subject to the lien of the attachment, the constable took and retained continuous and exclusive possession of them, under the successive executions above referred to, until the date of the sale. We refer to these details with particularity because of the appellees' contention that the continuity of the proceedings begun by the attachment was broken.

The mere bringing within the ninety days' period of an ordinary action against the seller for the recovery of a debt due at the time of the sale, is not the bringing of such proceeding to invalidate the sale as the proviso contemplates, and therefore a levy made on the goods after the expiration of that period, by virtue of an execution issued on a judgment in the action, cannot be held to relate back to the date of the bringing of the action: Ritter v. Wray, 45 Pa. Superior Ct. 440. But under the facts above recited this is not that kind of a case. The proceeding was begun promptly, within the prescribed period, by attachment of the very goods that were sold in violation of the provisions of the act, and there was no such abandonment or break in the continuity of that proceeding as would justify a holding that the goods were finally sold under a new and independent proceeding. In short, if it was an appropriate proceeding to invalidate the bulk sale to the plaintiffs, the date when it was begun, and not the date when the levy under the last execution was made, is to be taken in determining whether the condition of the proviso of sec. 1 of the act of 1905 was met. Was it an appropriate proceeding? No particular mode of procedure is prescribed by the act, but it has been held, upon full consideration of the subject, that a creditor has a right to attack the sale in the method which was always an available and appropriate method for a creditor to pursue in order to invalidate, that is, to render of no legal force and effect, so far as the collection of his claim is concerned, a sale of chattels which, as to such creditor, is voidable upon the ground of fraud, namely, to levy on the goods as the property of the debtor, and, in response to the sheriff's rule to interplead, to aver the facts which made such sale fraudulent and voidable as to creditors: Wilson v. Edwards, 32 Pa. Superior Ct. 295; Feingold v. Steinberg, 33 Pa. Superior Ct. 39. In Schmucker v. Lawler, 38 Pa. Superior Ct. 578, it was held that an attachment execution under the Act of

June 16, 1836, P. L. 755, was not an appropriate remedy because that section relates to goods pawned, pledged, or demised. Speaking of the particular case, we said: "In the case before us the appellant did not hold the property under any pledge or demise from the former owner. He bought and paid for it, and as between him and the seller it was his absolutely, but under the act of 1905 his title was liable to be defeated by the seller's creditors who were at liberty to disregard the sale and proceed against the property as if no sale had taken place. The property was subject to seizure in the hands of the purchaser by the seller's creditor, and this could be done by writ of fi. fa. as in the case of any other goods subject to levy and sale." It requires no extension of the principle upon which these decisions rest to hold that an attachment of the goods by the creditor under the act of 1842 is an appropriate remedy. This is conceded by the learned trial judge, but he says that the purchaser of the goods should have been made a party to the attachment proceedings in some form. In answer to that suggestion we remark, in the first place, it seems that the purchaser was as fully bound by the proceeding as is the purchaser where the goods transferred without compliance with the provisions of the act are levied upon by fi. fa. In the second place, it not only appears, by the return to the attachment, that a copy was served on the plaintiffs, but it also appears by their testimony, or at least the testimony of one of them, that they had actual notice of the attachment. The fact that the writ was served on them, or a copy of it, is undisputed. They thus had notice, not only that the goods which they had bought were attached, but that the sale of the goods to them was attacked by another creditor, who had a right to attack it, as fraudulent and voidable as against creditors. Upon the whole case we conclude that the sale was fraudulent and voidable as against creditors because of noncompliance with the requirements of the act of 1905, and that such proceeding to invalidate the

sale was brought within the prescribed time as entitled the defendant to prove that the sale was fraudulent and voidable as against creditors, in defense to this action of trespass brought to recover damages by reason of the constable's sale made on April 13, 1910. It follows that the defendant's request for binding direction should have been granted, and, that not having been done, that the motion for judgment non obstante veredicto upon the whole record should have been allowed.

The judgment is reversed, and judgment is now entered for the defendant non obstante veredicto.