# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

## George A. Kelly Company v. Snyder, Appellant.

*Contract—Sale—Bulk Sales Act of March 28, 1905, P. L. 62—Fraudulent Debtors' Act—Sale of drug store.*

1. Where a drug store business with all the goods is sold for a sum stated payable in monthly installments, and the vendee is to replenish the stock, and to pay all bills contracted therefor and the vendor has a right to inspect the vendee's books until all the installments are paid, and it is also provided that the vendor may resume possession upon any default by the vendee, a creditor of the vendee for goods sold to replenish the stock may pursue the goods, after the vendor has resumed possession, by an attachment under the Fraudulent Debtors' Act of March 17, 1869, P. L. 9, as amended by the Act of May 24, 1887, P. L. 197.

2. In such a case the failure of the vendor to observe the provisions of the Bulk Sales Act of March 28, 1905, P. L. 62, exposes them to an attachment under the Fraudulent Debtors' Act.

Argued April 17, 1914. Appeal, No. 89, April T., 1914, by defendant, from judgment of C. P. Allegheny Co., March T., 1911, No. 3, on verdict for plaintiff in case of George A. Kelly Company v. G. A. Snyder, trading as Snyder's Pharmacy, John W. Hyde, Garnishee. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

VOL. LVIII—1 (1)

Issue to determine ownership of a stock of goods attached under the Act of March 17, 1869, P. L. 9. Before CARNAHAN, J.

The court charged in part as follows:

[There was a levy made upon the goods in this store, and Mr. Hyde was summoned as a garnishee. Mr. Hyde claims that the goods in the store did not belong to Snyder at the time of this levy or issuing of the execution. In support of his claim he produces an article of agreement which indicates that he and his brother, some time in February of 1910, sold to Snyder his store and the things in the store and the leasehold upon certain terms. Certain payments were to be made at different times, and in the agreement there was a provision that if the agreement was not promptly observed by Snyder, Hyde Brothers could repossess themselves of the goods in the store. Mr. Hyde, the garnishee, claims here, and it does not seem to be disputed, that the agreement was not carried out by Snyder on his part; that he defaulted in his payments, and Mr. Hyde and his brother did repossess themselves of this store.

Further, it appears that Mr. Snyder himself voluntarily gave up his lease and surrendered the agreement and at the time of this execution the Hydes were in possession of this property.

The plaintiff claims that this is a fraud upon the creditors of Snyder, and that it is a creditor of Snyder; that the Hydes, by making this agreement, allowing it to be carried out on the part of Snyder and allowing him to conduct the store as if it was his, and allowing him to create debts, cannot now enforce their agreement as against these persons with whom these debts were created. That is their position. It was the act of Hyde, or at least participated in by Hyde, that enabled Snyder to contract these debts, and represent to Kelly that he was the owner of this store. The Kelly Company says on the strength of what appeared to be the

fact, on the strength of the fact, as they found it, that Snyder did have possession of his store and was running it, they gave him credit.

Right in that connection there is an act of assembly which has played an important part in the trial of this case, and in order that you may understand just the situation here, it will be necessary for me to read this act of assembly. It was passed for the protection of creditors.

Treating this as a sale by Snyder back to Hyde, and the effect is all the same so far as the creditors of Snyder are concerned, it was necessary under this act for the purchaser, Hyde, to ascertain the names and addresses of the creditors of Snyder, and to give notice to them. And in case that is not done, according to the provisions of this act, the sale shall be considered a fraudulent sale]. [3]

[If you believe the testimony introduced by the plaintiff, George A. Kelly Company, that Snyder was in possession of this store at the time he became a creditor of George A. Kelly Company; that he so represented to George A. Kelly Company; that on the strength of his possession of that store and the goods in it, George A. Kelly Company gave him credit, the credit for which this suit is now brought, and at the time of the return of the goods, or of the repossession by Hyde Brothers, no notice was given to George A. Kelly Company, under this sales act of this proposed repossession—or call it a sale—then the plaintiff is in a position to ask of you a verdict in his favor.] [4]

[Of course, if credit was not given on the strength of Snyder's possession of the store, that would be a different matter. If Hyde Brothers, by their act, permitted Snyder to do just what seems to have been done here—if you believe the testimony—then they cannot take the property back, except subject to the debts of Snyder, created on the strength of the fact that Snyder had that store. Those are questions of fact for you to

4    GEO. A. KELLY CO. *v.* SNYDER, Appellant.

Charge of Court below—Opinion of the Court.    [58 Pa. Superior Ct.

determine. As I say, they are not contradicted. Nevertheless, it is for you to say whether they are facts or not upon which you feel at liberty to act. If you find them to be so, your verdict ought to be in favor of George A. Kelly Company.

If you do not believe the testimony that the plaintiff has submitted to you, namely, that they gave credit to him on the strength of Snyder having this store; on the strength of the fact that their own representative visited the store and saw Snyder in there and did business with him in the store—if you do not find those things to be true, then the plaintiff ought not to recover, and your verdict should be in favor of the defendant, John W. Hyde, garnishee.] [5]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (3, 4, 5) above instructions, quoting them.

*James T. Buchanan,* with him *C. E. Theobald,* for appellant.

*H. B. Wassell,* of *Ache & Wassell,* for appellee.

OPINION BY ORLADY, J . July 15, 1914:

Hyde Brothers owned and conducted an established drug store business, which, on February 10, 1910, by a written article of agreement for a consideration of $3,800, they hired and let to Gerald A. Snyder. The writing carefully enumerates the several promises of the parties. Snyder took possession of the drug store; placed his sign "G. A. Snyder, Drugs," under the old sign "Hyde's Drug Store" on the front of the store building, and the name "Snyder's" across the prescription counter; $500 was paid in cash and the balance was secured by notes to become due monthly until the whole was paid, and Snyder agreed to pay the rent due under a

lease made by Hyde Bros. with the owner of the building. He was to replenish the stock from time to time and keep it in as good condition as at the date of the agreement, and "to pay monthly all bills contracted by him in the operation of the store." Hyde Bros. reserved the right to enter on the premises and "to examine at all times Snyder's books of account, in order to determine whether the conditions of the agreement were complied with." It was agreed that the drug store and all goods therein would remain the property of Hyde Bros. until the balance of the purchase money was paid "as well as future debts contracted in the operation of the store." In case of Snyder's default for sixty days in payment of any monthly installment, Hyde Bros. had the right, without process of law, to repossess themselves of the store and contents. Snyder made default in the payments falling due in September, October and November, 1910, and on November 26, he surrendered his agreement and lease to Hyde Bros., which by mutual consent was cancelled, and in consideration of Snyder's discharge from liability for the unpaid purchase money, Hyde Bros. repossessed themselves of the store, leasehold and all goods in the drug store, and entered into possession of the premises. On December 5, 1910, George A. Kelly Company issued a fraudulent debtor's attachment in assumpsit under the act of 1869, and supplements, for goods sold to Snyder while he was conducting this drug business and after due service on Snyder as defendant, and Hyde Bros. as garnishee, a judgment was entered in the plaintiff's favor against Snyder in default of an appearance for $509.69. The regularity of this judgment is not challenged. The case proceeded against the garnishees by interrogatories and answer, when a feigned issue was framed to determine the title, etc., to the goods seized by the sheriff under the attachment, and on a trial in court before a jury a verdict was rendered in favor of the plaintiff. The material facts are not in dispute, and

it is conceded that as between Snyder and Hyde Bros. the agreement was valid. It is clear that the terms of the sale by Hyde Bros. to Snyder were not known to Kelly, and that the goods delivered by the plaintiff to Snyder were sold on the faith and credit of the business then being openly conducted and avowedly owned by him. Hyde Bros. knew or could have known by inspection of Snyder's books of account that Kelly was furnishing goods and supplies to keep up the stock in the drug store, and that these accounts were not being paid by him.

The alleged lien on the stock was a secret one. Hyde Bros. permitted, if not induced Kelly to improve and enlarge this stock for their benefit, without notice to him of their claim against the original stock and the additions innocently made to it by Kelly. This conduct induced a credit in Snyder, so as to keep the business a going one at the expense of creditors who were misled to their injury by this secret agreement between the apparent owner and this claimant. The questions of extending credit to Snyder on the faith of his apparent ownership, and the purpose of the agreement between Hyde Bros. and Snyder were fully and carefully submitted to the jury. Hyde Bros. knew all the facts of the case, and were bound to give the notice, and proceed under the terms of the bulk sales act to make it a valid one under the facts set out by them in their answer to the interrogatories. They admit that they "repossessed themselves of the said drug store, leasehold and all the goods, chattels and merchandise therein, whereby all the equitable and legal rights of the said Gerald A. Snyder in and to the drug store and all his rights in the said agreement became totally null and void." The fraudulent debtors' act of 1869, with its supplements, prescribes the procedure to be followed under it, and the courts have passed upon the necessary pleadings to define the issue raised and protect the interests of all parties. The act of 1905 does not provide any mode

of procedure, and the appellant concedes that an attachment under the act of 1869 is a proper remedy to try the question as to whether the act of 1905 has been violated. As clearly stated by Judge MOSCHZISKER in Ochse v. Druda, 34 Pa. C. C. R. 151, "By treating the Act of 1869 and its supplement of May 24, 1887, P. L. 197, in connection with the act of 1905, we have a complete system for carrying the latter into execution, wherein the seller, the purchaser and the creditors, all as parties to the action, the goods in controversy are taken into the custody of the law, and relief worked out in a most expeditious and inexpensive manner." In Schumacher-Binzley Co. v. Riddle, 52 Pa. Super. Ct. 6, we held, "No particular mode of procedure is prescribed by the Act (March 28, 1905, P. L. 62), but it has been held, upon full consideration of the subject, that a creditor has a right to attack the sale in the method which was always an available and appropriate one for a creditor to pursue in order to invalidate, that is, to render of no legal force and effect, so far as the collection of his claim is concerned, a sale of chattels which, as to such creditor, is voidable upon the ground of fraud, namely, to levy on the goods as the property of the debtor, and in response to the sheriff's rule to interplead, to aver the facts which made such sale fraudulent and voidable as to creditors: Wilson v. Edwards, 32 Pa. Super. Ct. 295; Feingold v. Sternberg, 33 Pa. Super. Ct. 39." In this case all the parties in interest were properly in court under pleadings arranged by themselves, and all the facts in the case were fully developed on the trial without objection, as to the regularity of the pleadings. The case was heard and determined on its merits, and we do not find any reversible error in this record to justify a retrial.

The judgment is affirmed.